**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CALVIN BUCHANAN, N24002,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **ANTHONY WILLS,** <br> **C/O HART,** <br> **C/O HALL,** <br> **C/O FELDMAN,** <br> **MULDENHAUER,** <br> **JANE DOE 1,** <br> **CONNIE DOLCE,** <br> **JANE DOE 2,** <br> **TARA MCCOY,** <br> **WEXFORD HEALTH SOURCES, INC.,** <br> **LATOYA HUGHES,** <br> **JOHN/JANE DOES 3, 4, 5,** <br> **UNIDENTIFIED JOHN/JANE DOES,** <br><br> **Defendants.** | ) | **Case No. 25-cv-1587-DWD** |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Calvin Buchanan, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff's Complaint (Doc. 1) and Amended Complaint (Doc. 11) were dismissed as insufficient to state a claim and his Second Amended Complaint (Doc. 19) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous,

malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Second Amended Complaint**

Plaintiff's core factual contentions about two sinus infections are still intact, though his Second Amended Complaint now attempts to broaden the scope by providing historical information about the conditions he faces at Menard, and by attempting to delve into a volley of custom/policy/practice claims against administrators. New to this pleading, Plaintiff alleges that in May and October of 2024, he submitted emergency grievances about his unsanitary living conditions and the ill effects on his sinuses and ability to breathe. (Doc. 19 at 10-11). He alleges that each cellhouse is served by a maintenance tunnel that contains water, raw sewage, and countless pests, and that the tunnel is connected to each cell by square vents that allow open airflow. (*Id.* at 11-12). He claims that the tunnels pollute the cells with mold, mildew, foul odors and pests. He further alleges the drinking water is contaminated with multiple pollutants, which have caused him stomach pain, headaches, and diarrhea. (*Id.* at 12). Plaintiff further alleges Menard does not have any adequate ventilation system, so the air is polluted with mold spores and other elements. (*Id.* at 13). He collectively faults Defendants Wexford, Hughes, Wills, Muldenhauer, Dolce, McCoy, John/Jane Does 3-4, and John/Jane Does unidentified for knowing of these conditions and ignoring them. (*Id.* at 13-14). He claims

the risk to his health was highly predictable or plainly obvious, but he never got a response to his two emergency grievances. (*Id.* at 14).

Launching back into allegations consistent with his first two complaints, Plaintiff alleges that on November 18, 2025[1], he experienced shortness of breath, vertigo, and uncontrolled vomiting, which culminated when he lost consciousness. (*Id.* at 14). Due to the lack of emergency call buttons, other inmates had to yell to get staff assistance. (*Id.* at 14-15). Defendants Hart and Hall found Plaintiff unconscious and, rather than calling a Code 3 for a medical emergency, they drug him out of his cell and forced him into a wheelchair. (*Id.* at 15). Plaintiff faults Hart, Hall, and Feldman for failing to summon trained medical assistance, for handling him roughly, and for failing to consider if he had head, neck, or spinal injuries. The officers took Plaintiff to the medical unit where Defendant Muldenhauer directed Plaintiff to be taken to the emergency room. (*Id.* at 16). Plaintiff faults Muldenhauer for failing to immobilize his head, neck, and spine. (*Id.*). He alleges he did not regain consciousness until he was in the ambulance en route to the hospital. (*Id.*).

Plaintiff was diagnosed with a sinus infection and received antibiotics, but his complaints of head, neck, and back pain and numbess in his lower extremities were not addressed at the hospital. (*Id.* at 17). Back at Menard, Plaintiff alleges he was housed in the medical wing for a single day. He claims he complained to Muldenhauer about his

---

[1] Plaintiff's complaint clearly and unequivocally states that this first incident occurred on November 18, 2025 (Doc. 19 at 14), but as he discusses the incident further he then mentions November 20, 2024 (Doc. 19 at 17). Reading the entire complaint in context, it seems most plausible that Plaintiff had two sinus infection issues that required hospitalization in November and December of 2024.

unaddressed pain, to no avail. (*Id.* at 18). On November 20, 2024, Plaintiff's symptoms began to reemerge. He notified Jane Doe 1 of his issues when she came to his cell without medication, but he alleges she declined help and merely redirected him to the sick call slip and grievance process. Plaintiff complains that this response was inadequate because all Menard staff should be well aware that he is illiterate and cannot submit written requests without assistance from others. (*Id.* at 18-19). Plaintiff further alleges that the stress associated with the lack of treatment caused him significant emotional and physical distress. (*Id.* at 19-20). He alleges he submitted a grievance on November 21, 2024. On November 26, 2024, he received his antibiotics. (*Id.* at 20).

On December 7, 2025[2], Plaintiff lost consciousness again, was transported to the medical unit in a wheelchair, and was sent to the hospital. (*Id.* at 20). He was again diagnosed with a sinus infection and received new antibiotics. (*Id.* at 21). He alleges his pain was not addressed. Plaintiff's symptoms persisted through December 18, 2025, by which point he alleges he had submitted several written request slips with help from others. (*Id.* at 22).

On January 5, 2025, Plaintiff was seen by Jane Doe 2 at the healthcare unit. (*Id.* at 22). He alleges he informed Jane Doe 2 of his "serious medical needs" and she prescribed Tylenol. Plaintiff argues that this amounted to dismissing his serious needs. On January 10, 2025, Plaintiff submitted written requests to Defendants Dolce, Muldenhauer, and McCoy concerning his "serious medical needs," but he got no response. (*Id.* at 22-23).

---

[2] It is not clear if Plaintiff means to refer to December of 2024 or December of 2025. In his chronology of events, it would make morse sense if these dates were December of 2024, but Plaintiff wrote 2025 in his complaint. (Doc. 19 at 20-22).

On January 23, 2025, Plaintiff lodged an emergency grievance about his "serious medical needs" and the conditions of confinement. (*Id.* at 23). He alleges Defendants Hughes, Wills, Wexford, McCoy, Dolce, Muldenhauer, Jane/John Does 1-5, and the unidentified John/Jane Does were all mentioned in the grievance for their deliberate indifference to his situation. (*Id.*). He further alleges that the grievance faulted Wexford, Hughes, and Wills for failing to correct systemic problems. The grievance got no response. (*Id.* at 23-24). Plaintiff further alleges that on January 18, 2025, he mailed a complaint to Defendants Wexford, Hughes, and Wills about his medical needs and living conditions, but he received no response or acknowledgement. (*Id.* at 24-25).

Plaintiff alleges that since November of 2024 he has lost mobility, strength, and feeling, and he has chronic pain. (*Id.* at 25). He argues that "on information and belief" once a grievance or letter is lodged it reaches appropriate officials and initiates a duty to respond. (*Id.* at 25-26). He argues that the lack of a response from defendants demonstrates their deliberate indifference to his situation. (*Id.* at 26).

Plaintiff then proceeds to briefly describe legal theories against defendants. He faults Muldenhauer, Dolce, McCoy, and John/Jane Does 3, 4, and 5 for having general responsibility for medical care. (*Id.* at 27). He also faults Wexford for statewide responsibility for medical services and training. (*Id.* at 28). He faults Hughes for managing IDOC. (*Id.*). He faults John/Jane Does 3 and 4 for organizing outside specialty care. He faults Wills for executing policies, procedures, and practices and training staff. (*Id.*). He faults Jane Does 1 and 2 for dispensing medication. (*Id.* at 29).

In the second amended complaint, Plaintiff has enumerated his own four claims which the Court will adopt as follows:

Claim 1: Deliberate indifference claim against all Defendants for denying Plaintiff medical care for his serious medical needs;

Claim 2: Eighth Amendment conditions of confinement claim against Defendants Hughes, Wills, John/Jane Does 3-4, and unidentified John/Jane Does;

Claim 3: Intentional infliction of emotional distress claim against all Defendants;

Claim 4: Respondeat superior state law claim;

Claim 5: State law indemnification claim.

(Doc. 19 at 29-37). Plaintiff seeks immediate remediation of the conditions at Menard, an immediate transfer to Dixon Correctional Center, and an immediate mandate for Wexford and its agents to address his serious medical needs. (*Id.* at 37-38). Plaintiff also seeks monetary damages. (*Id.* at 38).

## **Analysis**

Claim 1

Plaintiff's claim for deliberate indifference has become broader than his original and first amended complaints, but the end result is no different. As for Defendants Hart, Hall, and Feldman who initially responded to Plaintiff's cell, he still faults them for failing to call a Code 3 or follow emergency medical protocol, but the failure to follow a prison policy does not amount to deliberate indifference. *Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws or departmental regulations). Plaintiff still alleges these three exhibited

excessive force when they drug him on the floor and placed him in a wheelchair, but as the Court previously explained these allegations do not rise to the level of intentional malice or wrongdoing that would be required to substantiate a claim for excessive force. At best, Plaintiff might be alleging that Hall, Hart, or Feldman's actions were negligent because they did not secure his head or neck, and did not consider injuries from his fall, but negligence is not enough to sustain a § 1983 claim.

Plaintiff faults Muldenhauer for not addressing his complaints of head, neck, and back pain, but it is not clear when he conveyed these concerns to Muldenhauer, what he said about these issues, or what Muldenhauer could observe. By Plaintiff's own account, he was unconscious during both the November and December events until he was en route to the hospital so he could not have conveyed problems to Muldenhauer in that state. Perhaps he saw Muldenhauer in the single day in November when he was in the infirmary or at some other point, but he has not said enough in this third pleading to substantiate any such claim. Plaintiff also alleges he sent a single written request slip to Muldenhauer in January of 2025, but got no response. He does not allege he ever saw Muldenhauer in person aside from the times when he was sent to the hospital. On the sparse factual allegations, Plaintiff has still failed to establish that Muldenhauer personally exhibited deliberate indifference to a serious medical need.

Plaintiff's interactions with Jane Does 1 and 2 are again based on single passing encounters, which the Court previously explained are not generally adequate to sustain a claim. *See e.g., Owens v. Duncan*, 788 Fed. App'x 371, 374 (7th Cir. 2019) (finding that inmate's allegations that four unnamed prison staff participated in denying him care

based on single interactions where they failed to summon him for sick call or did not give him pain medication were not sufficient to sustain deliberate indifference claims). Though Plaintiff complains generally that Menard staff should have known he could not independently lodge sick call slips or grievances, he does not claim Jane Doe 1 personally knew this, nor is it convincing that this prevented him from accessing care as he ultimately alleges he filed many slips and grievances, including one the day after he spoke to Jane Doe 1. As for Jane Doe 2, Plaintiff saw her a single time and she offered Tylenol for his pain. Offering a course of care that may later turn out to be ineffective is not deliberate indifference.

To the extent that Plaintiff continues to fault Defendants Dolce of McCoy for not acting on written correspondence about his medical needs, the Court has twice informed Plaintiff that to assess the plausibility of this claim it would need more information about the contents and timing of the correspondence to these two. Plaintiff now alleges he wrote request slips on or around January 10, 2025, about "denial of medical care for his serious medical needs" and got no answer. (Doc. 19 at 22-23). This is not the level of clarity that would be needed to sustain a claim against a prison administrator for receipt of written correspondence, nor is there any indication that Plaintiff attempted to reach these defendants more than once. The Seventh Circuit has indicated that a prison administrator may incur liability if he or she receives multiple highly detailed grievances and other pieces of correspondence detailing a serious medical issue. *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Here, even with three chances to amend, Plaintiff's allegations have not reached the level contemplated by *Perez* because he still has not

explained clearly what he communicated to Dolce or McCoy or how often he communicated with them.

In addition to McCoy and Dolce, Plaintiff now attempts to fault Wexford, Wills, Hughes, and potentially John/Jane Does 3-5 for receipt of written correspondence or their roles with the prison. These theories fail for several reasons. First, a letter writing campaign to high-level officials like Hughes, Wexford, or Wills is not a way to establish personal (or corporate for Wexford) liability under § 1983. *See e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (a letter writing campaign, or the view that any public official who became aware of an inmate's problem could be personally liable is not valid under § 1983). Plaintiff suggests at various points throughout his amended pleading that Hughes, Wills, and Wexford had policies, customs or practices that led to the harm he describes, but he never once plainly states what the policy or policies were that actually caused him direct harm, or how widespread those policies were. The threadbare legal assertion that policies, customs, or practices existed is insufficient.

Additionally, as for Hughes, Wills, and John/Jane Does 3-5, Plaintiff may be attempting to hold them liable merely as supervisors at the facility, but there is also no respondeat superior liability recognized under § 1983, so any such claim necessarily fails. *See* *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) ("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). For all of the foregoing reasons, Claim 1 is insufficient to support a plausible or viable claim under § 1983 against any of the named defendants for deliberate indifference to Plaintiff's serious medical needs.

**Claim 2**

Though both of Plaintiff's earlier complaints mentioned mold or the conditions of confinement in passing, he provided little elaboration beyond asserting Wills and Wexford were responsible for oversight of the facility. The Court previously explained these broad assertions were insufficient to establish personal liability. Plaintiff's second amended complaint now alleges that Defendants Hughes, Wills, John/Jane Does 3-4, and unidentified John/Jane Does should be held responsible for the conditions of confinement he has endured at Menard, that he believes have caused his medical issues. Though there is no doubt that the conditions Plaintiff describes, if true, are deplorable, he must also establish that the named defendants are personally involved in exposing him to these conditions, and that they failed to act when he alerted them to ill effects. To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many of these conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981),

inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

Plaintiff does not allege any discrete personal involvement of John/Jane Does 3-4 or the unidentified John Does in relation to his conditions of confinement. Naming a defendant without providing any detailed allegations about their personal involvement is not enough to sustain a claim. *See e.g.*, *Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (finding that a district court properly dismissed a party who was named as a defendant where the complaint lacked any factual allegations about that individual's personal involvement).

As for Hughes and Wills, the sole assertion is that they were alerted to the problems via grievances and other correspondence. As discussed in relation to Claim 1, highly detailed correspondence to an administrator may establish liability whereas a generic letter writing campaign will not suffice. Plaintiff is clear that he sent two emergency grievances in May and October of 2024, and he also alleges he submitted another emergency grievance in January of 2025, as well as sending registered mail to Hughes and Wills. This volume of correspondence surpasses what was allegedly sent to McCoy or Dolce, but there is still not a great level of clarity about the contents of the correspondence other than Plaintiff saying it concerned his serious medical needs and unsanitary conditions. Did Plaintiff live in the same cell this whole time, did he ask officers for help with the conditions to no avail, did he seek to be placed in a new cell, does he have any sort of evidence of a link between the conditions and his ailments other than his own speculation? Additionally, Plaintiff openly admits that none of these

grievances or letters ever got responses, which begs the question if they even gave Wills or Hughes actual notice of the things complained of therein. On the information pled, Plaintiff has not established sufficient personal involvement or knowledge by Hughes or Wills to proceed against them concerning his conditions of confinement.

**Claims 3-5**

Claims 3-5 all cite to state law. Given that the Court has concluded that Plaintiff's constitutional allegations under § 1983 are insufficient to proceed, the Court will now relinquish supplemental jurisdiction over the state law theories for relief. *See e.g.*, *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999) (the usual practice is to dismiss without prejudice supplemental state law claims whenever all federal claims have been dismissed prior to trial); *see also* *Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") Here, the Court finds no reason to maintain jurisdiction over state law claims after it has invested significant judicial resources in reviewing the federal claims and concluding they are not adequate to proceed.

Having now reviewed three complaints, the Court does not find it necessary to invite further amendments from Plaintiff in this matter. While he certainly has identified some medical unpleasantries in the last few years, it is not obvious that he continues to suffer from a serious medical condition, nor that there is any set of facts that could be used to hold the medical defendants or administrators liable for the very discrete interactions described in the three complaints. In fact, Plaintiff was twice hospitalized

and treated when his symptoms were at their worst. As for the conditions of confinement, this theory has been present throughout the case, but has never been a primary focus and has always lacked significant detail necessary to establish personal involvement of the defendants associated with this issue. While administrators can at times be found liable to individual inmates, the more typical course of liability is against the staff who interact with the plaintiff on a daily basis, observe the conditions, and refuse to remediate significant problems. Plaintiff has said nothing about his daily interactions with staff, or his quest to remediate problems with his cell placement other than that he engaged in a grievance or letter writing campaign and never got a single response. These generalities are not enough to plausibly allege personal responsibility against the defendants. The Court emphasized in its review of the original and first amended complaints that establishing personal responsibility was essential to plead a plausible claim under § 1983. At this juncture, Plaintiff has failed to effectively respond to the Court's earlier directives.

For all of the foregoing reasons, the Court does not find it necessary to invite a fourth amended pleading in this case. *See e.g.*, *Zimmerman v. Bornick, 25 F. 4th 491, 494 (7 Cir. 2022)* (amendment would be futile or otherwise unwarranted when "a plaintiff has already had multiple chances to cure deficiencies."). The Court has provided multiple opportunities to amend, and it has explained to Plaintiff the basic gaps his pleadings had that would need to be addressed. *See* *Orr v. Shicker*, 147 F.4th 734, 741-42 (7th Cir. 2025) (finding that a district court did not abuse its discretion by denying leave for a third or fourth amended complaint where the court had given multiple opportunities for

deficiencies to be cured, and deficiencies were not cured). Though Plaintiff has made a reasonable effort to address the identified issues, his claims still fall short of establishing personal responsibility by a named defendant. Thus, Plaintiff's complaint will now be dismissed for failure to state a claim, and Plaintiff will incur a strike under 28 U.S.C. § 1915(g). It should be noted that the dismissal will be without prejudice in case Plaintiff later wishes to attempt to pursue a more clear and concise claim about his conditions of confinement.

## Disposition

**IT IS HEREBY ORDERED THAT** Plaintiff's Second Amended Complaint (Doc. 19) is dismissed without prejudice as insufficient to state a claim. The Clerk of Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: October 16, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.10.16 10:38:22 -05'00'

DAVID W. DUGAN
United States District Judge